FILED
MAY - 5 2025
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**TIMMY A. CROCKETT,**
**Plaintiff.**

Case No.: ___1:25-cv-00298___
**Magistrate Judge Omar J. Aboulhosn**

### EMERGENCY EX PARTE MOTION FOR INJUNCTIVE RELIEF

Comes now, Plaintiff Timmy A. Crockett, pro se, to move this Court to order that the Plaintiff be allowed to have reasonable access to his legal mail/property and to prevent the West Virginia Division of Corrections and Rehabilitation from destroying said property on May 16, 2025. With that being said, there is no time for additional filings back and forth with the Court or the Clerk. The Plaintiff's property contains uncontroverted material evidence which proves that well established constitutionial precedents set in *Crain*[1], *Scott*[2], *Facility Review Panel*[3], *Dawson*[4], and *Hickson*[5] are being violated at Huttonsville Correctional Center and Jail.

1. The Plaintiff has pending mandamus[6] proceedings against the Governor, the Secretary of the West Virginia Department of Homeland Security, the State Fire Marshal, the Commissioner of the West Virginia Division of Corrections and Rehabilitation, and the Superintendent of Huttonsville Correctional Center and Jail, in their official capacities; as well as a pending civil action[7] against the West Virginia Division of Corrections and Rehabilitation.

2. The Plaintiff also has pending criminal complaints[8] against James C. Justice, II; William K. Marshall, III, Kenneth Tyree, Jr., Mark. A. Sorsaia, Shelby O. Searls, and Tim Mouse, as individuals.

---

[1] Crain v. Bordenkircher, 176 W. Va. 338, 342 S.E.2d 422 (1986)
[2] State ex rel. Dodrill v. Scott, 177 W. Va. 452, 352 S.E.2d 741, 1986 W. Va. LEXIS 596 (W. Va. 1986)
[3] Facility Review Panel v. Holden, 177 W. Va. 703, 356 S.E.2d 457, 1987 W. Va. LEXIS 515 (W. Va. 1987)
[4] Dawson v. Kendrick, 527 F. Supp. 1252, 1981 U.S. Dist. LEXIS 15959 (S.D.W. Va. 1981)
[5] Hickson v. Kellison, 170 W. Va. 732, 296 S.E.2d 855, 1982 W. Va. LEXIS 888 (W. Va. 1982)
[6] Kanawha County Circuit Court – Case: CC-20-2024-P-157 – Petition for Mandamus
[7] Randolph County Circuit Court – Case: 24-C-48
[8] Kanawha County Circuit Court – Case: CC-20-2025-P-141 – Application to Present Criminal Complaints to the Grand Jury

3. All of these issues stem from two buildings at Huttonsville which have not had annual inspections by the State Fire Marshal in over 25 years, as required by law. As such, these three story buildings also do not have fire supression systems mandated by statutes, federal ADA requirements, and cited constitutional precedents. There have been multiple unreported fires in these buildings.

4. Upon exercising his right to pursue legal action, the Plaintiff was immediately moved to the segragation unit at Northern Correctional Center. That was over a year ago, yet Judge Carrie Webster in Kanawha County refuses to issue a mandamus to remedy these nondiscretionary life-threatening public safety and public policy violations. The Plaintiff has now been moved between 5 facilities in 13 months. Most recently, he was transferred between 3 facilities in 42 days.

5. Yesterday, April 16, 2025, the Plaintiff was moved to Denmar Correctional Center (DCC) at 10:34 a.m. Upon arrival, he was told by DCC Administrator Jason Workman that per Policy Directive 400.03 (Inmate's Property), Section 2(4), the Plaintiff was only allowed to keep 2 inches of his legal property. This specific, yet arbitrary and capricious quantity is not substantiated by any reasonable legal logic.

6. Section 9 of said policy requires the staff at the sending facility to inventory the inmate's property and make the inmate aware of any items not allowed at the new facility. This due process did not occur. Section 9(A) further requires the Superintendent at the sending facility to notify the recieving facility of the restricted items found. This due process did not occur either. The policy does not take into account that some people have more than one active civil or criminal case. Said policy only references W. Va. Code §15A-4-9 as the basis for its enforcement, but that law strictly pertains to inmates' financial accounts, not legal mail or property.

7. At 1:15 p.m. Mr. Workman instructed the pro se Plaintiff that he had until 2:30 p.m. to select two inches of his legal property to keep. The rest must either be shipped out at the Plaintiff's expense, picked up by his attorney, or detstroyed after 30 days. Although he was not finished going through

his legal property, at 2:30 p.m. DCC Officer Fogus directed the Plaintiff to a copy room where Unit Manager Darrin McKinney photocopied less than two inches of his legal property, then required the Plaintiff to shred the originals. At 2:57 p.m. Mr. Fogus ordered the Plaintiff to bring the unsealed box containing the remainder of his legal property to the mail room. The Plaintiff twice asked if the box containing his legal mail and property could be taped or sealed shut; these requests were denied.

8. The Plaintiff also has material evidence on CDs and thumb-drives which he arrived with. These items were previously sent to the Plaintiff by the Respondents and other legal authorities pertaining to cited evidence in said cases. Mr. Workman told the Plaintiff that he is not allowed to access his digital evidence at all. All of these staff members work at the will and pleasure of three of the named Respondents in said pending mandamus and criminal complaints.

9. One of the thumb-drives was sent by a Respondent (State Fire Marshal) containing 256 pages of Fire Safety Inspection Reports, as well as other material evidence in those cases. On January 25, 2024, the State Fire Marshal invoiced[12] the Plaintiff $38.40 for the thumb-drive. The Plaintiff paid the invoice in full.

10. The Plaintiff understands the need to restrict excessive property in a confined environment. In good faith, the Plaintiff offered to consolidate all of his "paper" legal property to digital format by putting it all on one of the thumb-drives he already owns. Mr. Workman told the Plaintiff that was not an option since he was not going to let the Plaintiff access his digital legal property, ever. He then informed the Plaintiff that not only did his remaining paper legal property need to be shipped out, but that he couldn't keep his digital legal property either. Mr. Workman reiterated he must either pay to have everything shipped out, have it picked up by an attorney, or it will be destroyed within 30 days. (May 16, 2025)

---

[12] Exhibit SFMINVOICE

11. Right after the Plaintiff filed criminal complaints against the Respondents they moved him to the only facility in the Division that enforces this arbitrary and capricous rule. The Plaintiff was never made aware of this issue or policy at any other facility. The Plaintiff reminds the Court that he has been moved between 5 WVDCR facilites in 13 months with virtually the same amount of legal property, without any issues.

12. Both the United States and West Virginia Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law.[13] The due process guarantees of the United States and West Virginia Constitutions extend protection to any significant property interest. In this Court's recommendation in *Rose v. Sandy*, many of the same Respondents were sanctioned $4,000,000 for similar evidence destruction violations.

13. Imprisonment for a crime does not completely divest a person of due process protections.[14] Although the "Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement ... a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations."[15]

14. Even though the Plaintiff has futily pursued the grievance process, he also understands that the same people who told him he could not keep his legal property are the ones that oversee the grievance process at Denmar. As emphasized in *Rose*, the WVDCR grievance process is still futile in its structure and dilatoriness.

15. The Lexis Nexis subscription on the law library computer at Denmar is from 2020, which provides no access to state or federal Supreme Court rulings or case law for the past five years[16]. This prevents reasonable access to the courts as guaranteed by our state and federal constitutions.

16. It is well-recognized that prison inmates "have a constitutional right to 'adequate, effective, and meaningful' access to the courts and that the states have 'affirmative obligations' to assure all

---

[13] U.S. Const. amend. XIV § 1; W. Va. Const. art. 3, § 10.
[14] Wolff v. McDonnell, 418 U.S. 539, 555-56, 94 S. Ct. 2963, 41 L. Ed. 2d 935, (1974).
[15] Wilkinson v. Austin, 545 U.S. 209, 221-22, 125 S. Ct. 2384, 162 L. Ed. 2d 174, (2005).
[16] Citations from Rose v. Sandy are from Plaintiff's pending pleadings, not the Denmar law library.

inmates such access."[17] In *Bounds v. Smith*[18], the U.S. Supreme Court expounded on the obligation to provide legal access by stating "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The Plaintiff apologizes to the Court for any misspellings, as the law library computer is permanently set to ignore spelling and grammar errors.

17. Because time and constitutional rights are at stake, the Plaintiff humbly begs that the Court give this motion the most liberal interpretation possible and immediately apply all laws, rules, procedures, and constitutional protections known to the Court. At this critical stage in litigation, it is imperative to prevent Plaintiff's legal mail, evidence, and property from being destroyed or kept from him. The Plaintiff swears and attests that the facts contained herein are true and accurate.

## PRAYER FOR RELIEF

The Plaintiff hereby prays that the Court issue an order which:

A. Directs the West Virginia Division of Corrections and Rehabilitation to allow the Plaintiff to have reasonable access to all of his legal mail and property at Denmar Correctional Center during the pendency of said cases; or

B. Directs the West Virginia Division of Corrections and Rehabilitation to move the Plaintiff to a facility that will allow him to have reasonable access to all of his legal mail and property during the pendency of said cases; and

C. Directs the West Virginia Division of Corrections and Rehabilitation not to destroy Plaintiff's legal mail and property; and

D. Provides the Plaintiff any other available relief this Court feels is just.

Respectfully submitted on this 17th day of April, 2025 by,

_____
Timmy A. Crockett – Plaintiff
Denmar Correctional Center
4319 Denmar Road
Hillsboro, WV 24946

---

[17] Ramos v. Lamm, 639 F.2d 559, 583 (10th Cir. 1980).
[18] Bounds v. Smith, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), {2020 U.S. Dist. LEXIS 8} Id. at 828